# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HEMPHILL, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 23-CV-398-GLJ |
| | ) |
| BOARD OF TRUSTEES OF | ) |
| THE TOWN OF DICKSON, | ) |
| OKLAHOMA, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff, Hemphill, LLC, filed this action on November 20, 2023, against Defendant Board of Trustees of the Town of Dickson, Oklahoma, claiming that Defendant's denial of its application for a specific use permit violated the Telecommunications Act of 1996, 47 U.S.C. § 332 ("TCA"). Docket No. 2. The matter is presently before the Court on the parties' cross-motions for summary judgment. For the reasons detailed herein, Plaintiff Hemphill, LLC's Motion for Summary Judgment and Brief in Support [Docket No. 17] is DENIED and Defendant's Counter Motion for Summary Judgment and Brief in Support [Docket No. 18] is GRANTED.

## BACKGROUND

Ordinance No. 93, of the Town of Dickson, Oklahoma, establishes a procedure whereby individuals or entities may seek specific use permits for "uses which, because of the size of the land they require or the specialized nature of the use, may more intensely dominate the area in which they are located and their effects on the general public are

broader in scope than other uses permitted in the district." Docket No. 16, Administrative Record ("AR") 42. Section 9-903 of Ordinance No. 93 lists a "transmitting tower" as a "use allowed in all zoning districts by Specific Use permit[.]" AR 44-45. Section 9-902 sets forth the conditions for approval of a specific use permit, and Section 9-505 instructs, amongst other things, that the application is to be filed with the town clerk, accompanied with a site plan of the proposed area in addition to a $2,000 fee and requires notice of the public hearing be mailed to all owners within a three-hundred-foot radius of the subject property and published in the local newspaper. AR 42-46. Section 9-505 also provides, "[i]f an appeal is not timely filed, the recommendation of the Town Board shall be included on a council consent agenda for consideration and may be removed from the consent agenda by council pursuant to council rules. If an appeal is timely filed, the Town Board shall establish a date specific for its decision and may affirm." AR 46.

The undisputed facts reflect that on May 22, 2023, the Board of Trustees of the Town of Dickson, Oklahoma, ("Board") held a special meeting to discuss the possible construction of a Verizon cell phone tower with Plaintiff's representative, Ralph Wyngarden. AR 47. During this meeting, the Board requested Plaintiff contact Justin Landgraf regarding the town's ordinances and the process for submitting a specific use permit. *Id.* Thereafter, in June 2023, Plaintiff submitted a completed application for a specific use permit ("Application") with a cover letter, ownership lists detailing property owners within 300 feet of the proposed cell tower, aerial views of the property, engineer drawings, a "zero fall radius" letter, and an "FAA determination of no hazard" letter. AR 7-41. A public hearing was held on July 24, 2023, the minutes of which reflect that

Plaintiff's representative "gave a presentation on the need for the Version Tower and how it would benefit the town." AR 52. The minutes also reflect that "[c]itizens on the sign in sheet voiced their concerns" and that the issue was tabled until September 25th, 2023, to give the concerned property owners "within 1200 feet of the proposed tower address" additional time to conduct research. *Id.* Prior to the September 25th hearing, Plaintiff submitted supplemental materials in support of its application which sought to address the concerns raised at the July 2023 public hearing.[1] AR 57. The citizens of Dickson also submitted materials to the Board in support of their concerns.[2] AR 133-170. On September 25th, 2023, the Board unanimously denied Plaintiff's specific use permit at a public hearing, and Plaintiff did not appeal. AR130-131.

Plaintiff brings this action under the Telecommunication Act of 1996, 47 U.S.C. § 332(c)(7), to overturn the Board's decision to deny Plaintiff's Application. Plaintiff maintains that Defendant violated the TCA by failing to state the reasons for denying Plaintiff's Application and not supporting its decision with substantial evidence. Plaintiff also claims the denial of its Application has the effect of prohibiting wireless cellular services in violation of the TCA. Docket No. 17. Defendant maintains (i) Plaintiff was required to exhaust all administrative remedies prior to seeking judicial intervention, (ii)

---

[1] The July 24, 2023, hearing minutes do not indicate what concerns were raised. However, Plaintiff's supplement indicates that the concerns included "(1) [the] aesthetic impact of the tower on property value, (2) health fears, and (3) tower failure." AR 57.

[2] The citizens' materials consisted of web articles from various sources which discussed (1) an instance in which a self-supporting cell tower located in Texas collapsed following a tornado; (2) various possible adverse health effects from living near cell towers and studies pertaining thereto; (3) the impact cell towers have on property values; and (4) the possibility that cell towers may be extended an additional 20 feet without public approval. AR 135-59, 165.

the decision denying Plaintiff's application sufficiently stated its reasons for denial, (iii) the decision was supported by substantial evidence in the written record; and (iv) the decision does not have the effect of prohibiting wireless cellular services. Docket No. 18. The Court agrees with Defendant's first proposition—Plaintiff was required to exhaust all administrative remedies prior to seeking a determination from this Court.

## STANDARD OF REVIEW

Summary Judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if there is sufficient evidence on each side so that a rationale trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). The moving party must show the absence of a genuine issue of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), with the evidence taken in the light most favorable to the non-moving part. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c).

## ANALYSIS

"The Federal Telecommunications Act of 1996 . . ., 47 U.S.C. § 332, limits the decision-making authority of local government bodies regarding the placement of wireless communications facilities. . . . Congress adopted the TCA in order to promote competition

and higher quality in telecommunications services and to encourage the rapid deployment of new telecommunications technologies." *T-Mobile Central, LLC v. Unified Gov't of Wyandotte Cnty., Kansas City, Kan.*, 546 F.3d 1299, 1306 (10th Cir. 2008) (internal citations omitted). In furtherance of this goal, the TCA places "six restrictions on the authority of local governments in regulating the placement, construction, and modification of telecommunication facilities." *Id.* (citing 47 U.S.C. §§ 332(c)(7)(B)(i)-(v)). Four of these limitations are pertinent here. First, the TCA requires a decision by a "local government . . . to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). Second, "the regulation of the placement, construction, and modification of personal wireless service facilities . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II). Third, "[n]o State or local government . . . may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emission to the extent that such facilities comply with the Commission's regulations concerning such emissions." 47 U.S.C. § 332(c)(7)(B)(iv). Fourth and finally, "[a]ny person adversely affected by an final action . . . by a . . . local government or any instrumentality thereof that is inconsistent with [47 U.S.C. § 332(c)(7)(B)] may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction . . . [which] the court shall hear and decide such action on an expedited basis." 47 U.S.C. § 332(c)(7)(B)(v).

    I.        **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

As an initial matter, Defendant maintains that because Plaintiff did not amend its Application or appeal the denial of its Application to the Town Board pursuant to Section 9-505 of Ordinance No. 93 of the Town of Dickson, Oklahoma, Plaintiff failed to exhaust its administrative remedies and the Court should decline to hear Plaintiff's claims. Docket No. 18, pp. 21-22. Plaintiff does not contest the assertion that it did not appeal the denial of its application but asserts that the decision by the Board is a final decision under the TCA, and the TCA does not require "an applicant who is denied a special use permit by the body charged with determining whether to grant the permit [to] exercise any other right the applicant may have . . . to seek further review[.]" Docket No. 21, p. 18.

Ordinarily, "[w]here relief is available from an administrative agency, the plaintiff is . . . required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." *Reiter v. Cooper*, 507 U.S. 258, 269 (1993). The Supreme Court has recognized that the "judicial doctrine of exhaustion of administrative remedies is conceptually distinct from the doctrine of finality[.]" *Darby v. Cisneros*, 509 U.S. 137, 144 (1993). Indeed, "[w]hile the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise appropriate." *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*,

473 U.S. 172, 192 (1985), *overruled on other grounds by Knick v. Twp. of Scott*, 588 U.S. 180 (2019).

As both parties acknowledge, the plain language of the TCA does not explicitly impose a requirement to exhaust administrative remedies, and there appears to be a dearth of authority in this Circuit addressing whether the exhaustion of administrative remedies is required, or should be required as a prudential rule, under the TCA.[3] Docket No. 18, pp. 21-22; Docket No. 21, pp. 17-18; 47 U.S.C. § 332(c)(7). "[W]here there is no explicit statutory exhaustion requirement, courts must draw guidance from congressional intent, 'in determining whether application of the doctrine would be consistent with the statutory

---

[3] Although it does not appear that the Tenth Circuit has addressed whether the exhaustion of administrative remedies is required under the TCA, other Circuits that have considered the question have relied on *Darby v. Cisneros*, 509 137, (1993) and interpreted the TCA's "final action" requirement to accord with the APA's "final action" requirement. *See Global Tower Assets, LLC*, 810 F.3d at 86-87. In *Darby*, the Supreme Court noted that because "Section 10(c) [of the APA] explicitly requires exhaustion of all intra-agency appeals mandated either by statute or by agency rule; it would be inconsistent with the plain language of § 10(c) for courts to require litigants to exhaust optional appeals as well." *Darby*, 508 U.S. at 147. Thus, the Court concluded "where the APA applies, an appeal to 'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and administrative action is made inoperative pending that review." *Id.* at 154 (emphasis in original). In accordance with *Darby*, the First Circuit looked to the local ordinances of the Town of Rome and Maine state law and concluded the Town of Rome had a "two-stage administrative process for taking 'final administrative action[.]' . . . [A]nd so . . . the Planning Board's action was not 'final' under the TCA, given the administrative review that the Board of Appeals must undertake in consequence of the Ordinance and Maine law." *Id.* at 88. This Court declines to follow the reasoning set forth by the First Circuit in *Global Tower Assets, LLC*, because the "exhaustion doctrine continues to apply as a matter of judicial discretion in cases not governed by the APA[,]" and unlike Section 10(c) of the APA, the TCA does not "explicitly require[] exhaustion of all intra-agency appeals mandated either by statute or by agency rule[.]" *See Darby*, 508 U.S. at 147. Compare 5 U.S.C. § 704 ("Except as otherwise expressly required by statute, agency action otherwise final is final . . . unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority") *with* 47 U.S.C. 332(c)(7)(B)(v).

scheme.' Thus, in deciding whether [the] exhaustion of . . . remedies is required 'courts generally focus on the role Congress has assigned to the relevant federal agency, and tailor the exhaustion rule to fit the particular administrative scheme created by Congress.'" *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 61 F. Supp. 3d 1013, 1047 (D.N.M. Nov. 18, 2024) (quoting *Patsy v. Bd of Regents of Fla.*, 457 U.S. 496, 502, n.4 (1982)).

In this regard the legislative history of the TCA reveals two somewhat dichotomous objectives: "on one arm sits the need to accelerate the deployment of telecommunications technology, while on the other arm rests the desire to preserve state and local control over zoning matters." *ATC Realty, LLC v. Town of Kingston, N.H.*, 303 F.3d 91, 94 (1st Cir. 2002); H.R. Conf. Rep. 104-458, at 206-209 (1996). Additionally, the legislative history notes that "[t]he term 'final action' . . . means final administrative action at the State or local government level so that a party can commence action under [47 U.S.C. 332(c)(7)(B)] rather than waiting for the exhaustion of any independent State court remedy otherwise required." H.R. Conf. Rep. 104-458, at 209 (1996).[4]

Similarly, the purpose of the exhaustion rule is to permit agencies, and in this case State and local governments, "to exercise discretion and apply their expertise to allow the complete development of the record before judicial review, to prevent parties from circumventing the procedures established by Congress, and to avoid unnecessary judicial decisions by giving the agency an opportunity to correct errors." *Urban by Urban v.*

---

[4] Notably, although the legislative history explicitly mentions that an aggrieved party need not wait for the exhaustion of any independent State court remedy, it is silent as to whether an aggrieved party must pursue administrative remedies.

*Jefferson Cnty. Sch. Dist. R-1*, 89 F.3d 720, 726 (10th Cir. 1996) (citing *Ass'n for Cmty. Living in Co. v. Romer*, 992 F.2d 1040, 1044 (10th Cir. 1993)).

Undoubtedly, this case would have benefited from any further development of the record that may have occurred had Plaintiff proceeded to exhaust the administrative remedies available to it. In fact, Defendant implicitly acknowledges that the record before the Court is, at least to some extent, attenuated as evidenced by the affidavit Defendant submitted to "fill[] the gaps existing due to the hearings not being transcribed and lend[] a hand to clarification of the proceedings so this Court can be informed in its review." Docket No. 22, pp. 2-3. The exhaustion of the administrative appeals available to Plaintiff would have provided the Court with a more fulsome record, likely clarified many gaps in the record, and further enabled the Court to conduct an informed review.

Thus, the Court finds that requiring the exhaustion of administrative remedies, including any and all administrative appeals, is consistent with the statutory scheme set forth under the TCA, as the exhaustion doctrine undoubtedly preserves state and local control over zoning matters and does not unduly frustrate the TCA's alternate goal in accelerating the deployment of telecommunication technology. *See Darby*, 508 U.S. 137, 147 (1993) ("[T]he exhaustion doctrine continues to apply as a matter of judicial discretion in cases not governed by the APA."). Although requiring those aggrieved by a State or local government to exhaust any administrative appeals may delay judicial review, the process will likewise "increase the chance that an otherwise erroneous denial . . . will be identified and rectified, thereby obviating the need for initiating the lengthy judicial review process in the first place." *Global Tower Assets, LLC v. Town of Rome*, 810 F.3d 77, 85

(1st Cir. 2016). Indeed, "local agencies charged with administering regulations governing property development are singularly flexible institutions; what they take with one hand they may give back with the other." *MacDonald, Sommer & Frates v. Yolo Cnty.*, 477 U.S. 340, 350 (1986). Thus, the Court finds, as a matter of judicial discretion, that Plaintiff was obligated to exhaust its administrative remedies and failed to do so when it did not appeal the denial of its Application to the "Town Board"[5] pursuant to the ordinances of the Town of Dickson, Oklahoma. Defendant is therefore entitled to summary judgment, and the Court declines to reach the merits of Plaintiff's TCA claim.[6]

## CONCLUSION

Accordingly, based on the foregoing, IT IS ORDERED that Plaintiff Hemphill, LLC's Motion for Summary Judgment and Brief in Support [Docket No. 17] is DENIED and Defendant's Counter Motion for Summary Judgment and Brief in Support [Docket No. 18] is GRANTED.

---

[5] Based on the language of Ordinance No. 93, it is unclear whether this appeal would be to same entity that denied Plaintiff's initial application. Ordinance No. 93 references a "Board of Trustees" and a "Town Board." AR. 42-46. The excerpts of the Town of Dickson's Ordinances provided to the Court do not define either of these terms. The Minutes of the September 25th, 2023, hearing reflect that decision to deny Plaintiff's Application was made by the "Board of Trustees"; whereas, Section 9-505(D) of Ordinance No. 93 states that "[i]f an appeal is timely filed, the Town Board shall establish a date specific for its decision and may affirm." AR. 42. As such, the Court is unable to determine if the "Town Board" and "Board of Trustees are synonymous. Nonetheless, in the event that the Defendant Board of Trustees, would be the entity reviewing Plaintiff's appeal, "the fact that the individual named defendant[] would be the [one] reviewing [P]laintiff's administrative appeal[] is not enough to relieve" Plaintiff of its duty to exhaust administrative remedies. *Rando v. Standard Ins. Co.*, 182 F.3d 933, at *3-4 (10th Cir. 1999) (table) (internal citations omitted).

[6] To the extent Defendant argues that Plaintiff was required to amend its application to "essentially re-apply for different locations" the Court finds such argument unpersuasive.

-11-

IT IS SO ORDERED this 18th day of November 2024.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**